Filed 9/15/22  Doppes v. Norton CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| AUGUST B. DOPPES, | |
| Plaintiff and Appellant, | G059868 |
| v. | (Super. Ct. No. 30-2020-0147367) |
| ALAN NORTON et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, Melissa R. McCormick, Judge.  Affirmed in part, reversed in part, and remanded.

Godes & Preis, Joseph M. Preis and Oliver B. Dreger for Plaintiff and Appellant.

Whitney | Petchul, Frederick T. Whitney, Anne Rawlinson and Jacky P. Wang for Defendants and Respondents.

\*                  \*                  \*

INTRODUCTION

August B. Doppes filed a lawsuit against the individual members of the board of directors of his homeowners association.[1] He asserted derivative causes of action for breach of fiduciary duty and declaratory relief based on allegations the Board Members voted to approve heightened fines to enforce timely completion of construction on custom lots and a fee to cover the increased costs of road maintenance and repair resulting from increasing amounts of construction traffic. He also alleged the Board Members breached their fiduciary duties by secretly negotiating with certain homeowners and reaching secret agreements with them to reduce those fines and fees.

Doppes appeals from an order granting the Board Members' special motion to strike each of Doppes's causes of action pursuant to Code of Civil Procedure section 425.16, the anti-SLAPP statute.[2] The trial court concluded that all of Doppes's causes of action arose out of the Board Members' decisions to approve the fines and fees, which constituted acts in furtherance of the Board Members' right of petition or free speech.

On appeal, as in the trial court, the parties have taken an outdated approach to determining whether the complaint is subject to the anti-SLAPP statute: Both sides attempt to discern the gravamen or gist of each cause of action as a whole and then determine whether such gravamen constitutes activity protected under section 425.16(b)(1). This gravamen approach to multifaceted causes of action such as Doppes's is no longer used: It was rejected by the California Supreme Court in *Baral v. Schnitt*

_____

[1] The defendants/respondents are Alan Norton, Steve Speach, Christopher Mahon, Ed Grasso, and Herbert Lee, whom we refer to collectively as the Board Members.

[2] "SLAPP" is an acronym for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.) Further statutory references are to the Code of Civil Procedure unless otherwise stated. We refer to section 425.16, subdivision (b)(1) as section 425.16(b)(1) and section 425.16, subdivision (e) as section 425.16(e). We refer to the special motion authorized by section 425.16(b)(1) as an anti-SLAPP motion.

(2016) 1 Cal.5th 376 (*Baral*) and *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995 (*Bonni*) in favor of a claim-by-claim approach. When a cause of action includes more than one claim, that is, a set of facts each allegedly giving rise to relief, the correct approach to an anti-SLAPP motion is to consider whether each claim within a cause of action arises from activity protected under section 425.16(b)(1). The issue, therefore, is not the gravamen or gist of each of Doppes's causes of action, but whether each claim within the causes of action arose out of protected activity.

Although Doppes asserted five causes of action for breach of fiduciary duty and one cause of action for declaratory relief, all six causes of action are based on three distinct claims: (1) the Board Members voted to approve the fines relating to custom lot construction, (2) the Board Members voted to approve the fees relating to road maintenance, and (3) the Board Members engaged in secret negotiations and reached secret agreements with certain homeowners to reduce the fines and fees. Doppes alleged each claim gave rise to some form of relief.

The first two claims, we conclude, arise from allegations of acts in furtherance of a person's right of petition or free speech within the meaning of section 425.16(e)(3) and, therefore, were subject to an anti-SLAPP motion under section 425.16(b)(1). The third claim does not arise out of allegations of acts in furtherance of a person's right of petition or free speech and, therefore, was not subject to an anti-SLAPP motion. As to the third claim, the trial court should have denied the anti-SLAPP motion.

Because the first two claims arose out of allegations of protected activity, we must determine whether Doppes met his burden of making a prima facie factual showing sufficient to sustain a judgment in his favor. We conclude Doppes has not met his burden. Accordingly, we reverse the order granting the anti-SLAPP motion as to the third claim and affirm the order as to the first and second claims.

3

ALLEGATIONS OF THE COMPLAINT

Doppes alleged the following in his complaint:

Crystal Cove Community Association (the Association) is a homeowners association; that is, a nonprofit mutual benefit corporation organized under the Davis-Stirling Common Interest Development Act. (Civ. Code § 4000 et seq.) The Association is the master association responsible for managing Crystal Cove, a residential master planned community. The Association was created by and is governed subject to (1) a set of master covenants, conditions, and restrictions recorded in 2000 (the Master CC&Rs); (2) a custom lot declaration of covenants, conditions, and restrictions recorded in 2004, and later amendments (the Custom Lot Declaration); (3) a supplemental declaration of covenants, conditions, and restrictions regarding the completion of construction of dwellings on custom lots, recorded in 2004 (the Supplemental CC&Rs); and (4) the bylaws of the Association, dated March 2000 (the Bylaws).

Doppes has been a member of the Association since 2014 by virtue of being a beneficial owner of a single-family residence within Crystal Cove. The Board Members have served on the Association's Board of Directors since 2018 as follows: Norton has been the Association president, Speach the Association secretary and vice-president, Mahon the Association secretary, Grasso the Association treasurer, and Lee the Association member-at-large.

In January 2019, the Board Members approved a revised fine schedule (the Custom Lot Fine) for Association members who fail to finish construction of their custom homes in a timely manner. The fines previously had been graduated monthly fines starting at $250 and capping at $1,000. The new Custom Lot Fine was a flat $2,500 per month for failure to meet the deadline to begin construction of a residence on a custom lot and $10,000 per month for failure to meet the deadline to complete construction of a residence on a custom lot.

4

At the same time, the Board Members approved a "Road Impact Fee" of $15,800 on all custom lots on which the first construction of a residence was not completed beginning on July 1, 2020. The purpose of the Road Impact Fee was "'to cover the significantly increased costs of road resurfacing and repair resulting from frequent use by heavy construction vehicles.'"

Doppes alleged that by approving the Custom Lot Fine and the Road Impact Fee, the Board Members violated article VI, section 2 of the Master CC&Rs, which provides, "The Master Association shall not levy, impose or collect Assessments, penalties or fees that exceed the amount reasonably necessary for the purpose(s) for which they were levied."

After enacting the Custom Lot Fine and the Road Impact Fee, the Board Members secretly negotiated settlements with individual association members to reduce their fees: "[D]ue to the unreasonableness of the $10,000 monthly fine and the $15,800 Road Impact Fee, and in advance of the July 1, 2020, commencement, [the Board Members] have secretly negotiated, and continue to secretly negotiate, settlements for reduced fees, fines, and extensions of time for certain [Association] members. The identities of the members who have reached settlements with [the Board Members], the extensions of time for completion, and the exact amounts of these reduced fees and fines are unknown to Plaintiff as [the Board Members] refuse to disclose this information, and ratify these agreements in Executive Session. By [the Board Members] selectively negotiating with certain [Association] members and applying the Road Impact Fee and fine inconsistently and discriminating against certain [Association] members, [the Board Members] violated . . . the Master CC&Rs."

Doppes brought his lawsuit in a derivative capacity on behalf of the Association. As a precursor to filing suit, Doppes demanded that the Board Members rescind the revised Custom Lot Fine and the Road Impact Fee and "set a fine that is reasonable and not excessive and put the revised schedule to a membership vote." The

5

Board Members, who comprise the Association board of directors, refused and "continue to negotiate secret agreements with certain members to provide a reduced fine, a reduced Road Impact Fee, and additional time by which to complete construction."

The complaint asserted six causes of action: (1) breach of fiduciary duty, (2) breach of fiduciary duty — gross mismanagement, (3) breach of fiduciary duty — abuse of control, (4) breach of fiduciary duty — self-dealing, (5) breach of duty of undivided loyalty, and (6) declaratory and injunctive relief. All causes of action are based on and incorporate this core allegation: "[The Board Members] failed to act as reasonably careful board members would have acted under the same or similar circumstance by [(1)] approving an unreasonable $15,800 Road Impact Fee, [(2)] [approving] a $10,000 monthly fine for [Association] member's failure to complete construction of a residence on a custom lot in 5 years, and [(3)] subsequently agreeing in secret with certain [Association] members to circumvent the anticipated enforcement of its revised fine schedule and Road Impact Fee."

THE anti-SLAPP MOTION

The Board Members brought an anti-SLAPP motion to strike the entire complaint. They argued their votes to approve the Custom Lot Fine, the Road Impact Fee, and their negotiation of agreements with Association members were constitutionally protected activity made in connection with a public issue. The Board Members' memorandum of points and authorities in support of the motion (memorandum), at 21 pages, was six pages over the page limit imposed by California Rules of Court, rule 3.1113(d).

In his opposition to the anti-SLAPP motion, Doppes argued the "gravamen" of the complaint was not the approval of the Custom Lot Fine and Road Impact Fee but the negotiations and "back-room dealing" allowing certain Association members to avoid the fines.

6

The trial court granted the anti-SLAPP motion on the grounds the activities giving rise to Doppes's claims for relief were the decisions to approve the Custom Lot Fine and the Road Impact Fee, which were acts in furtherance of the Board Members' rights to free speech. The trial court found the allegation of secret negotiations and back room dealings "rest[ed]" on the allegations regarding approval of the Custom Lot Fine schedule and the Road Impact Fee and therefore also arose out of acts in furtherance of the right free speech. In addition, the court found the allegations related to matters of public interest within the meaning of section 425.16, and Doppes had failed to make a prima facie factual showing sufficient to sustain a favorable judgment. The court did not address the issue of the length of the Board Members' memorandum.

DISCUSSION

I. Summary of anti-SLAPP Law and Standard of Review

"A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16(b)(1).) "The anti-SLAPP statute does not insulate defendants from any liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, meritless claims arising from protected activity." (*Baral v. Schnitt*, *supra*, 1 Cal.5th at p. 384.)

Anti-SLAPP motions are resolved through a two-step analysis. (*Baral, supra*, 1 Cal.5th at p. 384.) At the first step, the defendant must establish that the challenged allegations or claims arise out of activity protected under section 425.16. (*Ibid.*; *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061(*Park*).) If the defendant meets this burden, then, at the second step, the burden

7

shifts to the plaintiff to demonstrate the claims have at least "'minimal merit'" (*Park,* at p. 1061) by making "a prima facie factual showing sufficient to sustain a favorable judgment" (*Baral,* at pp. 384-385, 396).

"We review an order granting or denying an anti-SLAPP motion under the de novo standard and, in so doing, conduct the same two-step process to determine whether as a matter of law the defendant met its burden of showing the challenged claim arose out of protected activity and, if so, whether the plaintiff met its burden of showing probability of success." (*Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28, 42.)

## II. First Step:  Identifying Allegations of Protected Activity and the Claims for Relief Supporting Them

"At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them." (*Baral*, *supra,* 1 Cal.5th at p. 396.)  After identifying the allegations of protected activity, the defendant must demonstrate the activity alleged falls within one of the four categories described in section 425.16(e).[3] (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 620 (*Rand*).)  In addition to the pleadings, the court may consider declarations and other evidence presented to determine what conduct is being challenged, but not to assess the merit of the claims.  (*Joslin v. Third Laguna Hills Mutual* (2020) 49

---

[3]  The four categories are:  "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  (§ 425.16(e).)

Cal.App.5th 366, 371; *Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1389.)

A. *The Claim-by-Claim Approach, Not the Gravamen Approach, Is Used at the First Step of the anti-SLAPP Analysis*

Both sides to this appeal cast the issue as whether the "gravamen" of each of Doppes's causes of action is based on protected activity.[4] The Board Members argue the gravamen of each cause of action is their decisions to approve the Custom Lot Fine and the Road Impact Fee which, the Board Members contend, constitute protected activity under section 425.16(e)(3) or (4). Doppes argues the gravamen of each of his causes of action is the Board Members' secret negotiations and agreements with certain Association members to reduce fines and fees and to extend the time for completing construction projects—activities which he contends are not protected.

The disagreement over the gravamen of Doppes's causes of action arises because Doppes alleged different claims within the causes of action, and not all claims arose out of protected activity. In such cases, the gravamen approach to identifying causes of action arising out of protected activity was rendered obsolete by *Baral, supra*, 1 Cal.5th 376, which established a claim-by-claim approach instead. *Baral* dealt with so-called "'mixed causes of action,'" that is, causes of action based on allegations of both protected and unprotected activity. (*Id.* at pp. 381-382; see *Bonni, supra*, 11 Cal.5th at p. 1010.) The California Supreme Court in *Baral* shifted the focus of analysis from evaluating the cause of action as a whole to evaluating individual claims so that a claim,

---

[4] The term gravamen has been defined as "the 'material part of a grievance, charge, etc.'" (*Lindros v. Governing Bd. of the Torrance Unified School Dist.* (1973) 9 Cal.3d 524, 540, fn. 13; see *Williamson v. Pacific Greyhound Lines* (1944) 67 Cal.App.2d 250, 252.) "The gravamen, or essential nature [citation], of a cause of action is determined by the primary right alleged to have been violated, not by the remedy sought [citation]." (*McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1159.)

rather than a cause of action, constitutes a "proper subject of a special motion to strike . . . ." (*Baral, supra*, 1 Cal.5th at p. 382; *id*. at p. 395.)

For purposes of the anti-SLAPP statute, a claim refers to a set of facts allegedly giving rise to relief. (*Baral, supra*, at pp. 382, 395.) A "cause of action" differs from a claim: A cause of action means the separate counts as pleaded by the plaintiffs. (*Dziubla v. Piazza* (2020) 59 Cal.App.5th 140, 148, fn. 4.) "A single cause of action can incorporate more than one claim; at the same time, a single claim can sometimes form the basis for more than one cause of action." (*Ibid*.)

The focus therefore is not on the "gravamen" of a cause of action as a whole, but on whether each claim *within* the causes of action arises from activity protected by section 425.16. This means the grant or denial of an anti-SLAPP motion directed to a mixed cause of action is not necessarily an all or nothing proposition. "When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at [the first] stage." (*Baral*, *supra*, 1 Cal.5th at p. 396.) If an anti-SLAPP motion is granted with respect to claims arising out of protected activity, any claims arising out of allegations of unprotected activity would remain.

In *Bonni, supra*, 11 Cal.5th 995, the California Supreme Court explained how *Baral*'s claim-by-claim approach made the gravamen approach obsolete even when, as in the present case, an anti-SLAPP motion is directed to entire causes of action: "Since *Baral*, most Courts of Appeal have taken a claim-by-claim approach to the anti-SLAPP analysis, rather than attempting to evaluate a cause of action as a whole. [Citations.] . . . Here, in a motion filed before *Baral* was issued, the [defendants] moved to strike the entire retaliation cause of action. [Plaintiff] contends that because the motion aimed at the entire cause of action, we should consider whether the gravamen of the entire cause of action was based on protected or unprotected activity. [¶] We reject the contention: Our holding in *Baral* applies even though the [defendants] sought to

10

strike the entire cause of action, rather than merely parts of it.  If we were instead to adopt [the plaintiff]'s proposed gravamen approach, we would again risk saddling courts with an obligation to settle intractable, almost metaphysical problems about the 'essence' of a cause of action that encompasses multiple claims.  [Citation.]  The attempt to reduce a multifaceted cause of action into a singular 'essence' would predictably yield overinclusive and underinclusive results that would impair significant legislative policies. Striking a cause of action that rests in part on unprotected activity constrains a plaintiff's ability to seek relief without advancing the anti-SLAPP's goals of shielding protected activity, which would have been fully served by striking from the complaint only the allegations of protected activity.  Conversely, refusing to strike any part of a cause of action that rests in part on protected activity defeats the legislative goal of protecting defendants from meritless claims based on such conduct." (*Bonni*, at pp. 1010-1011.)

Thus, according to *Baral* and *Bonni*, it is unnecessary—and analytically unsound—to discern the essence or gravamen of Doppes's causes of action, a task that would create "intractable, almost metaphysical problems . . . ." (*Bonni, supra*, 11 Cal.5th at p. 1011.)  Because the Board Members moved to strike Doppes's "multifaceted cause[s] of actions" in their entirety (*ibid.*), the correct analytical approach at the first step is to "identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Id.* at p. 1009.)

In his six causes of action, Doppes alleged three sets of facts, each of which gives rise to relief:  (1) "approving an unreasonable $15,800 Road Impact Fee," (2) approving "a $10,000 monthly fine for [Association] member's failure to complete construction of a residence on a custom lot in 5 years," and (3) "subsequently agreeing in secret with certain [Association] members to circumvent the anticipated enforcement of its revised fine schedule and Road Impact Fee."  These three claims are alleged throughout the complaint, and within the causes of action, as distinct acts of wrongdoing, any one of which is alleged to support relief under every cause of action asserted.

11

Although Doppes argues on appeal the first two claims are simply incidental to or evidence of the third, nowhere does the complaint so allege or even suggest. Doppes alleged separate and distinct injuries from the approval of the fines and the negotiating of the so-called back-room agreements: He alleged the former resulted in diminished property values while the latter resulted in unequal assessment of fees.

Doppes's opening brief confirms the approval of the fees and the alleged back-room dealings are intended to serve as multiple or alternate theories of recovery. He argues that if the Custom Lot Fine and Road Impact Fee were unnecessary, then the Board Members breached their fiduciary duties, the Master CC&Rs, the Custom Lot Declaration, the Supplemental CC&Rs, and the Bylaws by approving them; if the Custom Lot Fine and Road Impact fee were necessary, then the Board Members breached their fiduciary duties and engaged in mismanagement by selectively enforcing the fees.

On appeal, the Board Members identify only the first two activities— approval of the Custom Lot Fine and the Road Impact Fee — as the acts on which Doppes's claims rest. They contend the alleged negotiations and back-room deals do not in themselves constitute protected activity but are "subject to Anti-SLAPP protection because, as the Complaint repeatedly states, the speech and actions at the heart of the 'scheme' were enactment" of the Custom Lot Fine and the Road Impact Fee. This characterization of Doppes's complaint is inaccurate and ignores the claim-by-claim analysis confirmed by *Baral*.

B. *Claims One and Two: Approval of Custom Lot Fine and Road Impact Fee*

We conclude Doppes's first two claims arise out of protected activity within the meaning of section 425.16(e)(3). It states that activity protected under section 425.16(b)(1) includes "[(1)] any written or oral statement or writing [(2)] made in a place open to the public or a public forum [(3)] in connection with an issue of public interest."

12

(*Id*., subd. (e)(3).)  The Board Members' approval of the Custom Lot Fine and Road Impact Fee satisfies all elements of this definition.

    1.  Written or Oral Statement or Writing Made in a Public Forum

Voting to approve the Custom Lot Fine and Road Impact Fee constitutes written or oral statements or a writing made in a place open to the public or a public forum.  (§ 425.16(e)(3).)  Board meetings of a homeowners association have been deemed to be public forums within the meaning of the anti-SLAPP statute because a homeowners association board exercises quasi-governmental authority and board meetings by law must be open and permit association members to speak freely at them.  (*Lee v. Silveira* (2016) 6 Cal.App.5th 527 (*Lee*); *Cabrera v. Alam* (2011) 197 Cal.App.4th 1077; *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 473.)

In *Lee, supra*, 6 Cal.App.5th 527, the Court of Appeal concluded the act of voting at a board meeting of a homeowners association is protected activity when voting itself is the alleged wrongful conduct and not merely incidental to the claim.  (*Id.* at pp. 541-543, 545.)  In *Lee*, three members of a homeowners association's board of directors sued six other board members based on their vote to enter into a contract with a management company and their vote to approve a roofing project without receiving the required number of bids.  (*Id.* at pp. 535-536, 542-543.)  The court concluded that voting in those instances by individual board members was an act in furtherance of the right to free speech under section 425.16(e)(3).  (*Lee,* at p. 545.)

In *Talega Maintenance Corp. v. Standard Pacific Corp.* (2014) 225 Cal.App.4th 722 (*Talega*) the Court of Appeal recognized that voting, though not protected per se, may constitute protected activity.  (*Id*. at p. 729.)  The *Talega* court concluded that voting by the directors of a homeowners association was not protected activity under the facts presented because the plaintiff's claims arose from the act of

13

spending money in breach of the defendant directors fiduciary duties; voting was "merely incidental" to those claims. (*Id*. at pp. 729-230.) In *Lee*, by contrast, the substance of the plaintiffs' claims was the defendant director had engaged in wrongful conduct "as a result of *how* they voted in board meetings on public issues." (*Lee, supra*, 6 Cal.App.5th at p. 543.)

Doppes's claims that the Board Members engaged in wrongdoing "by approving" the Custom Lot Fine and Road Impact Fee are based on *how* the Board Members voted at a board meeting. Voting therefore constituted a "written or oral statement or writing" (425.16(e)(3)) made "in furtherance of the person's right of petition or free speech" (*id*., subd. (b)(1)) in "a place open to the public or a public forum" (*id*. subd. (e)(3)).


## 2. In Connection with an Issue of Public Interest

The term "issue of public interest" is not limited to governmental matters but has been construed broadly to include private conduct affecting a broad segment of society or a community in a manner similar to governmental action. (*Lee, supra*, 6 Cal.App.5th at p. 540.) "'[I]]n cases where the issue is not of interest to the public at large but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging participation in matters of public significance.'" (*Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 131.)

With respect to homeowners associations, an issue is of public interest if it affects "a broad segment, if not all" of the association members. (*Lee, supra*, 6 Cal.App.5th at p. 540 [board's decisions to approve roofing project and hire management company were issues of public interest]; see *Country Side Villas Homeowners Assn. v.*

*Ivie* (2011) 193 Cal.App.4th 1110, 1118 [homeowner's complaints about maintenance of balconies "affected all members of the association"].)  In *Damon v. Ocean Hills Journalism Club*, *supra*, 85 Cal.App.4th 468, the statements at issue concerned whether a homeowners association should self-govern or switch to a professional management company and whether the plaintiff general manager of the association was competent to manage it.  The Court of Appeal concluded the statements "pertained to issues of public interest within the Ocean Hills community" because they "concerned the very manner in which this group of more than 3,000 individuals would be governed—an inherently political question of vital importance to each individual and to the community as a whole." (*Id.*, at p. 479.)

The Custom Lot Fine and Road Impact Fee constituted issues of public interest within the meaning of section 425.16(e)(3).  The evidence showed custom lot construction, lack of compliance with construction deadlines, and deterioration of Association roads caused by such construction had been the subject of board meeting discussions and actions for years.  The Association has incurred significant expense addressing custom lot violations.  The Board Members consulted with experts and commissioned a study to determine the likely amount of future road repair expenses related to construction on custom home builds

Delayed construction, deterioration of Association roads, and steps taken to enforce compliance with deadlines and road maintenance, affected all Association members.  There were about 87 owners of undeveloped custom lots in Crystal Cove (which had a total of 778 total lots) who were potentially subject to the Custom Lot Fine and Road Impact Fee at the time they were approved.[5]  Although owners of undeveloped

---

[5]  Crystal Cove has a total of 778 lots, of which 175 were sold as undeveloped lots for construction of custom homes.  When the anti-SLAPP motion was filed, construction had been completed on 111 custom lots, leaving 64 with uncompleted construction.

15

lots would more acutely feel the impact of the fines and fees, their imposition and collection would affect the Association's revenues and expenditures, and thereby affect all Association members. The Custom Lot Fine was intended to induce compliance with the five-year construction deadline and avert the cost, felt by all Association members, of more expensive means of enforcement. Revenue generated by the Road Impact Fee was intended to address "a significant reserve shortfall relating to the rapid deterioration of Association streets . . . ." Addressing a reserve windfall and improving the condition of the Association's roads would be a matter of interest to all Association members.

C. *Claim Three: Alleged Secret Negotiations and Agreements*

Doppes third claim arises out of allegations that the Board Members engaged in secret negotiations and reached secret agreements with certain Association members to impose reduced fines and extend deadlines for completing construction. Relying on *Talega, supra*, 225 Cal.App.4th 722, Doppes argues such conduct was not protected activity under section 425.16. The Board Members do not disagree; they fall back on their position that voting, which is protected, was the gravamen of the complaint.

The alleged secret negotiations and agreements were not "written or oral statement[s] or writing[s]" that were "made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" (§ 425.16, subd. (e)(1)), or "made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law" (*id*., subd. (e)(2)), or "made in a place open to the public or a public forum in connection with an issue of public interest" (*id*., subd. (e)(3)). We do not see how the negotiations and agreements could constitute "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (*Id*., subd. (e)(4).)

16

In *Talega*, the plaintiff homeowners association sued a developer and three former employees of the developer who, upon formation of the association, had been appointed board members to represent the developer's interests. (*Talega, supra*, 225 Cal.App.4th at p. 726.) The complaint alleged the defendant board members fraudulently represented to the association that it was responsible to pay for repairs to hiking and equestrian trails in order to induce the association to spend over $500,000 for that purpose. (*Ibid.*) The complaint alleged the defendant board members knew but failed to disclose that under the controlling documents the developer was responsible for the cost of repairs and that the damages were the result of the developer's improper construction of the trails. (*Ibid.*)

The trial court denied an anti-SLAPP motion brought by the defendant board members, and the Court of Appeal affirmed. (*Talega, supra*, 225 Cal.App.4th at p. 726.) The appellate court concluded the plaintiff's constructive fraud, breach of fiduciary duty, and negligence causes of action were based on allegations the defendant board members withheld information and improperly directed the expenditure of funds to repair the trails. (*Id.* at p. 728.) Such conduct amounted to expenditure of funds in violation of the defendant board members' fiduciary duties, was separate and distinct from voting, and was not conduct in furtherance of the constitutionally protected right of free speech under section 425.16. (*Talega,* at p. 729.)

In the present case, the alleged secret negotiations and agreements made with certain Association members were separate and distinct from voting to approve the Custom Lot Fine and Road Impact Fee. Unlike voting, the allegedly secret negotiations and agreements were not acts in furtherance of the constitutionally protected rights of free speech and petition and were not made in a public forum.

17

D. *Conclusion*

We move to the second step of the anti-SLAPP analysis as to Doppes's claims for relief arising from allegations the Board Members approved the Custom Lot Fine and Road Impact Fee. We have concluded claims arising out of allegations of secret negotiations and agreements do not arise out of protected activity: Those claims remain in the complaint without undergoing a second-step analysis.

### III. Second Step: Demonstrating the Claims Arising Out of Allegations of Protected Activity Are Factually Substantiated

A. *Burdens and Standards at Second Step*

At the second step of the anti-SLAPP analysis, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Baral, supra*, 1 Cal.5th at p. 396.) The court accepts the plaintiff's evidence as true and does not weigh evidence or resolve conflicting factual claims. (*Id*. at p. 384.) If the plaintiff's evidentiary showing would be "sufficient to sustain a favorable judgment," then the anti-SLAPP should be denied. (*Id.* at p. 396.) "If not, the claim is stricken" and "[a]llegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." (*Ibid.*)

In meeting his burden at the second step, Doppes cannot rely on his own pleading. (*Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism, supra, 23* Cal.App.5th at p. 49.) Doppes's burden was "'not high'" (*Greene v. Bank of America* (2013) 216 Cal.App.4th 454, 458), yet he had to show his claims have at least the requisite "minimal merit" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89).[6]

---

[6] Relying on *Taus v. Loftus* (2007) 40 Cal.4th 683 (*Taus*), the Board Members argue that Doppes, in addition to presenting evidence supporting a prima facie case, also had to submit admissible evidence "*sufficient to overcome [the Board*

Although the trial court did not reach the second step of the anti-SLAPP analysis, we exercise our discretion to determine whether Doppes met his burden of making a prima facie factual showing sufficient to sustain a judgment in his favor. (*Schwarzbud v. Kensington Police Protection and Community Services Dist. Bd.* (2014) 225 Cal.App.4th 1345, 1355; see *Baral, supra*, 1 Cal.5th at p. 396.)

## B. *Doppes Did Not Meet His Burden of Making a Prima Facie Showing*

Doppes asserted derivative causes of action for five varieties of breach of fiduciary duty. To recover for any form of breach of fiduciary duty, Doppes must prove: (1) a fiduciary relationship, (2) breach of a fiduciary duty, and (3) damages proximately caused by the breach. (*Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1509.)[7]

---

*Members'] defenses*" and had to present evidence that was "*more persuasive* than the evidence presented by [the Board Members]." (Italics added.) This is an incorrect statement of Doppes's burden. In *Taus*, the California Supreme Court confirmed that "the court does not *weigh* the credibility or comparative probative strength of competing evidence," and added that the court "should grant the [anti-SLAPP] motion if, *as a matter of law*, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim. (*Id.* at p. 714.)

[7] In addition to simple breach of fiduciary duty, he asserted breach of fiduciary duty "gross mismanagement," "abuse of control," "self-dealing," and "undivided loyalty." The elements of a breach of the fiduciary duty of undivided loyalty are: (1) a fiduciary relationship between plaintiff and defendants; (2) the defendants knowingly acted against plaintiff's interests in connection with a transaction; (3) the plaintiff did not give informed consent to defendant's conduct; (4) the plaintiff was harmed; and (5) the defendants' conduct was a substantial factor in causing harm. (CACI No. 4102; see *Sequoia Vacuum Systems v. Stransky* (1964) 229 Cal.App.2d 281, 287-288.)

Doppes easily satisfied the first element. The directors of a homeowners association are fiduciaries who must act for the benefit of the association and its members. (*Coley v. Eskaton* (2020) 51 Cal.App.5th 943, 958; *Ostayan v. Nordhoff Townhomes Homeowners Assn., Inc.* (2003) 110 Cal.App.4th 120, 126-127.)

To meet his burden of demonstrating a prima facie case of breach, Doppes relied on his own declaration and on evidence presented by the Board Members in support of their anti-SLAPP motion. That evidence included a declaration from each Board Member stating that in June 2018 each member voted to approve the Custom Lot Fine and the Road Impact Fee. Those decisions are undisputed and are reflected in the minutes of the board of directors meeting, which also were submitted by the Association as evidence. The amounts of the fines and fees also were undisputed. The Custom Lot Fine schedule, which was submitted as an exhibit by the Board Members, shows the new fees were a flat $2,500 per month for failure to meet the deadline to begin construction of a residence on a custom lot and $10,000 per month for failure to meet the deadline to complete construction of a residence on a custom lot. The schedule also shows the previous fines had been graduated monthly fines starting at $250 and capping at $1,000. The amount of the Road Impact Fee was $15,800.

Doppes argues approval of the Custom Lot Fine and Road Impact Fee constituted breaches of fiduciary duty by violating article VI, section 2 of the CC&Rs, which provides, "The Master Association shall not levy, impose or collect Assessments, penalties or fees that exceed the amount reasonably necessary for the purpose(s) for which they were levied." Article VI, section 2 of the CC&Rs is substantially the same as Civil Code section 5600, subdivision (b), which states, "An association shall not impose or collect an assessment or fee that exceeds the amount necessary to defray the costs for which it is levied." In *Watts v. Oak Shores Community Assn.* (2015) 235 Cal.App.4th

20

466, 475-476, the court interpreted former Civil Code section 1366.1,[8] the predecessor statute to section 5600, subdivision (b), as not requiring an "exact correlation" between the fee or assessment and the cost for which it was levied. Instead, "[t]he most reasonable interpretation of former [Civil Code] section 1366.1 is that it requires nothing more than a reasonable good faith estimate of the amount of the fee necessary to defray the cost for which it is levied." (*Watts*, at p. 476.)

Doppes had the burden, as part of making a prima facie showing, of producing or identifying evidence demonstrating that the amounts of the Custom Lot Fine and Road Impact Fee were not good faith estimates of the amounts reasonably necessary for their purposes. Doppes did not present evidence to satisfy that burden; instead, he argues the sheer magnitude of the fees and fines demonstrate their unreasonableness.

Doppes does not explain how the magnitude of the Custom Lot Fine and Road Impact Fee is, in itself, evidence their approval constituted breaches of fiduciary duty. The only evidence Doppes submitted regarding the reasonableness of the amounts of the Road Impact Fee and Custom Lot Line was a single paragraph in a declaration. Doppes declared: "Recently, Defendants raised the minimum rate of fine for untimely construction within the [Association] from a minimum monthly fine of $250 to a monthly fine of $10,000 — the so-called 'Custom Lot Fine.' This massive increase was justified by [the Board Members] in their notice letter by stating it was an 'incentive' to speed up construction. At no time have [the Board Members] publicly indicated to the members of [the Association] precisely how the $10,000 figure was calculated, what rendered the particular figure of $10,000 necessary, or how many such $10,000 collections were expected to be recovered in order to address any particular purpose of the [Association]." This paragraph would not be "sufficient to sustain a favorable judgment." (*Baral, supra*, 1 Cal.5th at p. 396.)

---

[8] Repealed by Statutes 2012, chapter 180, section 1 and reinstated with nonsubstantive changes as Civil Code section 5600, subdivision (b).

Doppes states in his opening brief that he relied on the Board Members' "own declarations" in producing evidence to meet his burden of making a prima facie case. The evidence presented by the Board Members regarding the amount of the Custom Lot Fine and Road Impact Fee tends to disprove breach of fiduciary duty. The Board Members declared the Association was incurring about $130,000 per year in costs to patrol construction traffic and to prevent traffic from backing up onto Pacific Coast Highway, the Association's general manager and two other employees were spending over 20 percent of their time each month dealing with custom lot violations, and this time accounted for a minimum of $50,000 each year in staff expense. The Board Members each declared that, given the cost of constructing a home on a custom lot, the prior fine had been "ineffective to gain compliance" and had "little effect" on owners who did not live on site. The Association had the option either of pursuing expensive litigation to enforce the CC&Rs or "delay and potentially waive its ability to enforce if the applicable statute of limitations were to run."

The Board Members testified in their declarations that the amount of the Road Impact Fee was based on an expert's opinion that the Association should expect the cost of street repairs to increase by $1,369,308.87 over a five-year period. The figure of $1,389,308.87 was divided by 87 (at that time, the number of custom lot owners who had not completed construction) and the result was rounded upward to reach $15,800.

The Association provided the required notice to all members of the proposals for the Custom Lot Fine and Road Impact Fee. The Association's board of directors met in open session and considered all comments submitted by members.

This evidence thus supports findings that the Custom Lot Fine and Road Impact Fee were justified and reflected good faith estimates of the amount necessary to defray the costs for which they were levied. The evidence identified by Doppes therefore would not support a judgment in his favor on his claims the Board Members breached their fiduciary duties by approving the Custom Lot Fine and Road Impact Fee.

C. *Section 425.15, subdivision (a) Is Inapplicable*

The Board Members contend Doppes's claims fail as a matter of law because Doppes did not comply with section 425.15 before filing this lawsuit. Section 425.15, subdivision (a) (section 425.15(a)) requires a plaintiff to obtain leave of court before asserting a cause of action against a person serving without compensation as director or officer of a nonprofit corporation "on account of any negligent act or omission by that person within the scope of that person's duties as a director acting in the capacity of a board member." Section 425.15(a) is limited by its terms to causes of action based on negligence. Doppes did not have to comply with section 425.15(a) because all of his causes of action were based on intentional conduct.

## IV. The Trial Court Did Not Err by Accepting the Board Members' Oversize Memorandum

Doppes contends the trial court erred by considering the Board Members' moving papers on the anti-SLAPP motion because the supporting memorandum, excluding the caption page, table of contents, and table of authorities, was 21 pages in length.

Rule 3.1113(d) of the California Rules of Court states a memorandum in support of a motion, except a summary judgment or summary adjudication motion, may not exceed 15 pages in length. Rule 3.1113(g) states, "A memorandum that exceeds the page limit of these rules must be filed and considered in the same manner as a late-filed

23

paper." As for late-filed papers, Rule 3.1300(d) states, "If the court, in its discretion, refuses to consider a late filed paper, the minutes or order must so indicate."

In the present case, the court minutes and order granting the anti-SLAPP motion do not indicate the trial court refused to consider the Board Members' overly-long memorandum. We therefore assume the court exercised its discretion to consider the memorandum. The trial court's decision to consider the Board Members' memorandum is reviewed for abuse of discretion. (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 765 [discretion to consider late-filed memorandum].)

The abuse of discretion standard measures whether, in light of the evidence, the lower court's decision falls within the permissible range of options set by the legal criteria. (*Bank of America, N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1089.) An action that transgresses the bounds of the applicable legal principles is deemed an abuse of discretion. (*Ibid*.)

The trial court's decision to consider the Board Members' memorandum did not exceed the bounds of reason or transgress the bounds of the applicable legal principles. Anti-SLAPP motions can be complicated—often as complicated as summary judgment motions. The Board Members' motion was complicated enough that acceptance of a 21-page memorandum was not unreasonable. Further, we see no prejudice suffered by Doppes. He could have sought leave to file an opposition memorandum exceeding the page limit if he believed that would have been necessary to address the arguments presented in the Board Members' memorandum. The final six pages of the Board Members' memorandum addressed issues which we are resolving in Doppes's favor, are moot, or are irrelevant to the disposition of this appeal.

DISPOSITION

The order granting the anti-SLAPP motion is reversed as to the claim arising out of allegations the Board Members engaged in secret negotiations and

24

agreements with certain Association members to circumvent the anticipated enforcement of the Custom Lot Fine and Road Impact Fee. The order granting the anti-SLAPP motion is affirmed as to the claims arising out of allegations of the Board Members voting to approve the Custom Lot Fine and Road Impact Fee. The matter is remanded for further proceedings. Because each side prevailed in part, no party shall recover costs on appeal.


SANCHEZ, J.

WE CONCUR:


GOETHALS, ACTING P. J.


MARKS, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.